**Affirmed and Opinion filed December 11, 2018.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-16-00440-CV

---

### DALE L. JOHNSON, Appellant

### V.

### NATIONAL OILWELL VARCO, LP, Appellee

---

**On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2013-62983**

---

## O P I N I O N

Dale L. Johnson appeals from an adverse jury verdict in his race-discrimination, employment-termination case against National Oilwell Varco, LP ("NOV"). In seven issues, Johnson contends that the trial court abused its discretion in (1) denying his motion for new trial; (2) imposing time limits in the middle of trial; (3) refusing to charge the jury in keeping with a federal pattern jury instruction; (4) finding that NOV only negligently, as opposed to intentionally, destroyed video

evidence; (5) failing to order a remedy for destruction of the evidence that would have restored Johnson's ability to prove his case; (6) refusing to sanction NOV; and (7) admitting certain evidence while excluding other evidence. We affirm.

## *Background*

In June 2013, Johnson, who is African-American, was terminated from his position as a machinist at NOV's West Little York facility, where he had worked for almost 23 years. NOV stated that the reason for the termination was a violation of its "lock-out, tag-out" (LOTO) procedures. On June 6, Johnson was working at his machine, a Vertical Turning Center or VTC, when a maintenance employee, Henry Sierra, placed a red tag on the control panel of the machine. The tag stated "Caution Maintenance in Progress," and according to NOV, such tags were used to indicate that a machine should not be operated until the tag was removed or the operator was told to run the machine by a maintenance employee or supervisor.

At the time, Sierra needed to perform repairs on a conveyor that fed parts into the VTC. According to Johnson and other witnesses, Sierra only needed to tag the conveyor to perform the work safely, he did not need to place the tag on the control panel of the VTC. Tagging just the conveyor would have allowed Johnson to continue working. Moreover, Johnson and others stated that Sierra should have first obtained permission from a supervisor before shutting Johnson's machine down in this manner. After Sierra placed the tag, Johnson, who was purportedly working on a rush job, closed the door of his machine and prepared it to begin operating.[1] NOV and its witnesses maintained that this was a serious breach of LOTO rules and a safety hazard that placed Pablo Amador—a maintenance worker who had begun working on the conveyor, Sierra, and potentially other employees at risk of injury.

---

[1] Machinists apparently use the phrase "setting the machine" to describe this action.

There was considerable disagreement at trial regarding whether Johnson or Sierra had violated LOTO policy and whether any alleged violation was sufficient to warrant termination.

Sierra reported Johnson's alleged LOTO violation to Johnson's supervisor, Ian Laing, who, after asking Johnson about the incident, reported it in an email to the machine shop manager, Kevin Evans. Subsequently, after reviewing written statements by Sierra and Amador, and purportedly viewing security video of the incident, Laing (Caucasian), Evans (Asian), and Human Resources Manager Gail Garcia (Caucasian) agreed that Johnson's employment should be terminated. The termination was effective June 13, 2013.

Johnson thereafter filed a charge with the Equal Employment Opportunity Commission (EEOC) and the present lawsuit, alleging that race was a motivating factor in his termination. Among other things, Johnson asserted that Sierra, who is Hispanic, had a history of using a racial epithet towards Johnson, and Evans, who is Asian, had treated Johnson and another African-American machinist differently than he treated other non-African-American employees in the machine shop. In a prior lawsuit, Evans had also been accused of retaliation against an employee who had made an allegation of discrimination at a previous company where Evans had worked. Johnson further asserted that Laing also had treated him differently than Laing did other employees.

Prior to trial, it was revealed that the security video that purportedly showed the incident that led to Johnson's termination had been destroyed. As will be discussed in more detail below, there apparently had either been a problem with copying the video onto a USB drive or it had been deleted or overwritten after being copied. As will also be discussed below, the loss of the video was the subject of multiple attempts at recovery, a spoliation claim by Johnson, and requests for

sanctions. The trial court determined that NOV negligently caused the destruction of the video but declined to find that NOV intentionally destroyed the video. The trial court therefore declined to give a spoliation instruction to the jury. Although the trial court ordered NOV to pay for the attempts to recover the video, it did not otherwise sanction NOV for its conduct, and, in fact, denied all five of Johnson's motions for sanctions, as well as one motion for sanctions filed by NOV against Johnson's attorney.

Counsel for both sides originally told the judge that they thought the case could be tried in four days, but when examination of the first witness took longer than expected, the judge raised the issue of time limits for the remainder of the trial. The judge expressed concern that one of the jurors had prepaid vacation plans that would be jeopardized if the trial went longer than initially expected. After consultation with counsel, Johnson was given 7-8 hours to complete his case, and NOV was given 6-7 hours to complete its case. Ultimately, the court granted Johnson additional time to question at least two witnesses, but Johnson did not present all of the witnesses he had originally listed as testifying.

Also during trial, the court admitted into evidence Johnson's EEOC charge against NOV over Johnson's objection. NOV sought with this evidence to show that Johnson had changed or supplemented his allegations over time. Contending that NOV had thus opened the door to such evidence, Johnson sought to introduce evidence concerning how other employees had been treated by NOV under allegedly similar circumstances. NOV objected that these comparators were not sufficiently similar to support admission, and the trial court sustained the objection.

At the close of evidence, the jury was asked, among other things, whether race was a motivating factor in NOV's decision to discharge Johnson. The jury charge included an instruction explaining what constitutes a "motivating factor." Johnson

4

additionally requested that the charge include a "permissive-pretext" instruction. The requested instruction was pulled from the Fifth Circuit Pattern Jury Instructions and would have informed the jury that: "If you find that the reason [NOV] has given for firing is unworthy of belief, you may, but are not required to, infer that Johnson's race was a motivating factor in [NOV]'s decision to terminate him." The trial court denied Johnson's request. The jury then returned a 10-2 verdict favoring NOV, and the trial court entered final judgment in keeping with the verdict. The trial court denied Johnson's motion for new trial.

## *Discussion*

As stated above, Johnson contends that the trial court erred in (1) denying his motion for new trial; (2) imposing time limits; (3) refusing to instruct the jury on permissive pretext; (4) failing to find that NOV intentionally destroyed the video; (5) failing to order a sufficient remedy for the destruction of the video; (6) refusing to sanction NOV; and (7) admitting the EEOC charge while excluding comparator evidence. Because Johnson's first issue merely congregates arguments made under other issues, we will address that issue last.

## I.      Time Limits

In his second issue, Johnson contends that the trial court erred in imposing time limits on the presentation of evidence. Johnson's main complaints are that the limits were imposed after trial had already begun and to preserve a juror's prepaid vacation. We conclude that Johnson failed to preserve his complaints in the trial court and, even if Johnson had preserved the issue, the trial court did not abuse its discretion by imposing time limits under the circumstances.

### A. Governing Law

Pursuant to Texas Rule of Evidence 611, trial courts "should exercise

5

reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." Tex. R. Evid. 611(a). Moreover, every trial court has the inherent power to control the disposition of the cases on its docket "with economy of time and effort for itself, for counsel, and for litigants." *Hoggett v. Brown*, 971 S.W.2d 472, 495 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Metzger v. Sebek*, 892 S.W.2d 20, 38 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (quoting *Landis*, 299 U.S. at 254–55). Accordingly, the trial court's inherent power, together with applicable rules of procedure and evidence, accord trial courts broad, but not unfettered, discretion in managing trials. *State v. Gaylor Inv. Tr. P'ship*, 322 S.W.3d 814, 819 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Hoggett*, 971 S.W.2d at 495; *Metzger*, 892 S.W.2d at 38.

## B. Additional Background

Prior to the start of trial, counsel for both sides represented to the trial judge that the case would take four days to try. On the basis of these representations, the judge allowed someone to serve on the jury who had a prepaid vacation scheduled that would allow for five to five-and-a-half days of testimony plus another day for deliberations.[2] Although the judge disqualified other potential jurors due to time conflicts, he stated that he would not disqualify that particular potential juror because

---

[2] The record on appeal does not include the voir dire examination of the jury panel or related proceedings, but the trial judge related the pertinent facts during later discussions, and counsel either agreed with or did not note any inaccuracies in the judge's recounting. We presume that the missing portions of the record would support the trial court's judgment. *See, e.g., Aduli v. Aduli*, 368 S.W.3d 805, 819 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

counsel had represented that the trial would be over in time for the potential juror to leave on his vacation. No one asked the potential juror when his vacation would end. Johnson's counsel did not object to the potential juror, and he was placed on the jury.

By the end of the first day of testimony, examination of the first witness (Johnson himself) was taking considerably longer than expected, in part due to the number of bench conferences that were being requested. The judge expressed concern that the trial would not be completed by the time the juror needed to leave for vacation and also noted that "I think everybody in this courtroom wants to get this over with for a lot of different reasons but not the least of which [is] the stress . . . litigation has on people." NOV's counsel stated that he also had a conflict if the case went longer than anticipated.

The judge therefore discussed with counsel for both sides how to get the case tried within the budgeted time. Together, counsel and the judge went through the estimated time needed for the examination of each of the expected remaining witnesses. Johnson's counsel stated that she respected the court's "right to pare down the case" and actively participated in the discussion. When the estimates exceeded the available time, the judge suggested four possibilities: impose time limits on testimony, declare a mistrial, proceed with 11 jurors, or pause the trial while the juror was on vacation. Both sides staunchly agreed that they did not want a mistrial. The judge, however, indicated that the court may not have enough time to complete the case if the examination of witnesses continued to exceed time estimates. NOV's counsel offered ways he could pare down his case, and he offered to accept less time than Johnson, so long as the time limitations were strictly enforced. The judge dismissed counsel for the day, telling Johnson's counsel to return the next day with ideas on how she could pare down her case. The court again indicated that he would have to consider a mistrial if the case could not be completed in the time allotted.

The next day, after the completion of Johnson's testimony, the judge began the discussion concerning time by stating that he was "probably" going to impose time limits, allotting 7-8 hours for Johnson to finish his examination of witnesses, and 6-7 hours for NOV.[3] Johnson's counsel then stated her only express objection to time limits: "for the record, I'm opposed to the time limit." The trial judge requested useable, equitable alternatives, and Johnson's counsel suggested NOV could concede the amount of attorney's fees Johnson would be awarded if Johnson succeeded on the merits. When NOV's counsel responded by suggesting that, if necessary, the amount of attorney's fees could be tried to the bench after the jury returned its verdict, Johnson's counsel stated that she was about to propose the same thing.

> The following exchange then occurred:
>
> THE COURT: [Johnson's counsel], do you agree to try the attorney's fees, in the event you are the prevailing . . . party[,] to the Court after the jury has rendered a Verdict?
>
> [Johnson's Counsel]: Yes.
>
> THE COURT: Thank you. . . . Tell me what else you think is a more equitable situation. What else would you do in this situation? What's your suggestion?
>
> [Johnson's Counsel]: We've already shaved off an hour.
>
> THE COURT: No. I think we shaved off two hours. I legitimately think we've shaved off two hours. The question here is can you shave—if there—if I say there are 15 hours of trial time to be divvied up and I do eight to the Plaintiff and seven to the Defendant, that, by the way, includes whatever is left on Mr. Johnson, which, by the way, I think y'all have had enough from Mr. Johnson.

---

[3] As indicated, the time limits were imposed after Johnson had testified over two days. The limits also did not include the parties' opening or closing arguments or voir dire of the jury panel.

[NOV's Counsel]: Oh, I've got 15 minutes, your Honor.

THE COURT: And that's—and that's about it.

[NOV's Counsel]: Yes, sir.

THE COURT: And, in fact, I would say that we need to get finished with Mr. Johnson in 30 minutes in on Monday.

[NOV's Counsel]: I have 15.

[Johnson's Counsel]: 15 for the Plaintiff and 15 for the Defendant.

[NOV's Counsel]: Fine. You can hold me to it, Judge.

THE COURT: You good with that, [Johnson's counsel]?

[Johnson's Counsel]: Yes. I am trying to be good with it.

THE COURT: It makes you become very efficient. So, here's what I'm going to do: I'm going to proceed with the thought that we have 15 hours of trial time on Monday and Tuesday.

The trial judge then mentioned speaking to the jury about taking shorter breaks and the discussion ended.

Thereafter, the subject of time limitations came up sporadically as the court reminded counsel that they were running out of time or needed to stick to the most pertinent questions. On at least two occasions, the judge honored Johnson's counsel's request for additional time to question a witness. On appeal, Johnson complains that he was unable to put on five of his twenty listed witnesses and had to cut short the examination of several others.

### C. Failure to Preserve Complaint

To preserve a complaint for appellate review, a party must make a timely and sufficiently specific request, objection, or motion stating the specific grounds for the desired ruling if they are not apparent from the context. Tex. R. App. P. 33.1(a).

9

Failure to make a timely, specific objection to time limits imposed by a trial court waives any error. *Schwartz v. Forest Pharmaceuticals, Inc.*, 127 S.W.3d 118, 126–27 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

Although Johnson's counsel at one point stated that she was "opposed to the time limit," she did not cite any legal basis for this objection. To the contrary, counsel had already agreed that the court had the "right to pare down the case." More importantly, after stating her opposition, counsel appeared to agree that trying attorney's fees to the bench would cut sufficient testimony to enable the trial to conclude in the time allotted. Johnson does not point to any place in the record where counsel renewed her objection or attempted to present a witness that the trial court did not permit. It is also worth noting that counsel did not complain when the juror—whose vacation schedule was the primary time constraint—was placed on the jury. Accordingly, Johnson did not preserve his complaint regarding the trial court's imposition of time limits. *See, e.g., Zurita v. SVH-1 Partners, Ltd.*, No. 03-10-00650-CV, 2011 WL 6118573, at *11–12 (Tex. App.—Austin Dec. 8, 2011, pet. denied) (holding party waived complaint regarding time limits imposed mid-trial by failing to make a timely, specific objection); *State v. Reina*, 218 S.W.3d 247, 254 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (same).

### D. No Abuse of Discretion

Additionally, even if Johnson had preserved his complaint regarding the time limitations, the trial court did not abuse its discretion under the circumstances. As set forth above, when examination of the first witness went considerably longer than expected, the trial judge found himself in a difficult position. Based on the parties' mutual representation that the trial would take approximately four days, the judge had allowed a juror on the jury who had a prepaid vacation scheduled to commence at a time that would allow for approximately five to five-and-a-half days of

10

testimony plus time for deliberations. Neither side had objected to putting that juror on the jury. The judge therefore discussed the issue of time with the attorneys, working diligently to determine how much time was still needed and how the presentation of evidence could be pared down to fit the time available.

Although the juror's vacation schedule appears to have been the main catalyst for the trial judge's concern, the judge also indicated that it was in everyone's interest to complete the proceedings efficiently, and NOV's counsel stated that he also had a conflict if the trial continued past the time allotted. Moreover, Johnson's counsel acknowledged that making the juror miss his prepaid vacation would not be a good idea, as it might make him angry.

In hindsight, Johnson urges that the court should have more strongly considered pausing the trial and then reconvening after the juror returned from vacation, but counsel did not urge this remedy during trial. The trial judge may also have considered the inconvenience and disruption that pausing the trial before completion would likely have caused to the court itself, the parties, and the jurors. *See Hoggett*, 971 S.W.2d at 495 (explaining that a trial court has inherent power to control the disposition of cases on its docket "with economy of time and effort"); *see also Reina*, 218 S.W.3d at 255 (noting, in holding trial judge did not err in refusing to grant party more time to examine witness, the judge considered the effect that an extension would have on jurors). The judge indicated that if the case was going to take much longer to try, it would have to be moved six months further down the court's docket, presumably because the docket was crowded with other matters. These factors may have led the judge to choose the option of time limits rather than pausing and later reconvening the trial. And regardless, the availability of another option alone does not mean that the judge abused his discretion in imposing time limits.

11

Johnson additionally emphasizes that the time limits were imposed after the trial had already begun; however, he does not cite any authority suggesting this was improper. As happened here, the pace of a trial—and the resulting need for time limits—may only become apparent after a trial has begun. *See, e.g., Walker v. Hitchcock I.S.D.*, No. 01-11-00797-CV, 2013 WL 3771302, at *7 (Tex. App.—Houston [1st Dist.] July 16, 2013, no pet.) (holding trial court did not abuse its discretion in imposing time limits mid-trial).

The record demonstrates that the judge acted with diligence and fairness in considering the options and dividing the remaining time, even giving Johnson an hour longer to present his case than NOV received and further extending that time when Johnson requested additional time to examine two of the witnesses. *See Metzger*, 892 S.W.2d at 38 (stating that a judge must exercise his or her judgment in managing trials while weighing competing interests and maintaining an even balance). Under the circumstances presented, the trial court's decision to impose time limits during trial was not arbitrary, unreasonable, or without reference to guiding principles. *See Gaylor Inv.*, 322 S.W.3d at 816, 819. Accordingly, the trial court did not abuse its discretion, and we overrule Johnson's second issue.

## II.    Permissive Pretext Instruction

In his third issue, Johnson contends that the trial court erred in refusing to include a permissive-pretext instruction in the jury charge. Question 1 of the charge read as follows:

### QUESTION 1

Was race a motivating factor in Defendant's decision to discharge Plaintiff?

A "motivating factor" in an employment decision is a reason for making the decision at the time it was made. There may be more than one motivating factor for an employment decision.

12

In addition to the "motivating factor" instruction, which was included, Johnson requested a permissive-pretext instruction that read: "If you find that the reason Defendant has given for firing is unworthy of belief, you may, but are not required to, infer that Plaintiff's race was a motivating factor in Defendant's decision to terminate him." Johnson asserts that because the claim submitted in Question 1 was under federal law, the permissive-pretext instruction was required pursuant to precedent of the Fifth Circuit Court of Appeals and the Fifth Circuit Pattern Jury Instructions.

## A. Standards of Review

A trial court has considerable discretion in determining which jury instructions are necessary and proper in a particular case. *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000). We therefore review a trial court's refusal to submit a particular instruction for an abuse of discretion. *Id*. A jury should not be burdened with surplus instructions, even those that accurately state the law. *Arocha v. State Farm Mut. Auto. Ins. Co.*, 203 S.W.3d 443, 445 (Tex. App.–Houston [14th Dist.] 2006, no pet.). When a trial court refuses to submit a requested instruction, the question on appeal is whether the request was reasonably necessary to enable the jury to render a proper verdict. *See* Tex. R. Civ. P. 277 & 278; *Tex. Workers' Comp. Ins. Fund v. Mandlbauer*, 34 S.W.3d 909, 911 (Tex. 2000). We may reverse and remand based on jury-charge error only if it was reasonably calculated and probably did cause the rendition of an improper judgment, considering the pleadings, the evidence presented at trial, and the charge in its entirety. *See* Tex. R. App. P. 44.1(a)(1); *Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex. 1986).

## B. Johnson's Authority Is Not Controlling

In support of his position, Johnson principally relies upon the Fifth Circuit's

opinion in *Ratliff v. City of Gainesville, Tex.*, 256 F.3d 355 (5th Cir. 2001). As an intermediate Texas court of appeals, we are not bound to follow precedent from the Fifth Circuit even on matters of federal law. *See Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993). We may consider Fifth Circuit opinions as persuasive authority but are only bound to follow precedent on federal matters from the United States and Texas supreme courts. *Id*. Neither supreme court has stated an opinion on whether a permissive-pretext instruction is necessary in a Title VII discrimination case. Moreover, as will be discussed below, the federal circuits have split on this issue, and a subsequent panel of the Fifth Circuit has disagreed with the *Ratliff* panel regarding whether the instruction is required. *See Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 574-77 (5th Cir. 2004) (noting split among circuits, disagreeing with *Ratliff*, following it anyway as precedential, but holding any error in failing to instruct the jury was harmless); *see also Estrada v. City of San Antonio*, 452 F. App'x 573, 575 (5th Cir. 2011) (following both *Ratliff* and *Kanida*).

Johnson's citation to the Fifth Circuit Pattern Jury Instructions is equally unavailing. The pattern instructions do not have the force of law and need not be followed even by federal district courts within the Fifth Circuit's jurisdiction. *See United States v. Porter*, 542 F.3d 1088, 1097 (5th Cir. 2008); *United States v. Williams*, 20 F.3d 125, 132 (5th Cir. 1994).

### C. Issue of First Impression

As this is an issue of first impression in our court, we now examine authority both holding the instruction is required and concluding that the instruction is not required. In *Ratliff*, the case Johnson relies upon, a panel of the Fifth Circuit concluded that a permissive-pretext instruction was required by extension of principles set forth by the United States Supreme Court in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). In *Reeves*, the Court clarified the

14

legal burden of production a Title VII discrimination plaintiff must meet in order to have his or her case go to a jury, explaining that "a plaintiff's prima facie case [of discrimination], combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." 530 U.S. at 146-48.

Concerned that in the absence of a permissive-pretext instruction, jury deliberations would "depend on whether the jurors are smart enough or intuitive enough to realize that inferences of discrimination may be drawn from the evidence establishing plaintiff's prima facie case and the pretextual nature of the employer's proffered reasons for its actions," the panel in *Ratliff* concluded that "[i]t does not denigrate the intelligence of our jurors to suggest that they need some instruction in the permissibility of drawing that inference." 256 F.3d at 361 n.7 (quoting *Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 281 (3d Cir.1998)).

In *Kanida*, a subsequent panel of the Fifth Circuit criticized the *Ratliff* panel's extension of *Reeves* and conclusion that an instruction was necessary on five grounds. 147 F.3d at 574-77. First, *Reeves* only addressed the proper analysis in directed verdict and summary judgment cases and not in jury trials. Second, nothing in *Reeves* indicates an intention to change what a plaintiff must ultimately prove, i.e., that the adverse employment action was motivated by actual discriminatory intent.[4] Third, a jury may make numerous inferences from the evidence and requiring a specific instruction on just one permissible inference risks confusing the jury. Fourth, the jury in *Kanida* received proper instructions regarding the ultimate legal question and that it was permitted to draw reasonable inferences justified by the

---

[4] As the Fifth Circuit recognized in both *Ratliff* and *Kanida*, the permissive-pretext instruction is "only an evidentiary instruction, and to prevail employees must prove that the employer's actions were taken because of the prohibited motivation." *Kanida*, 363 F.3d at 573 (citing *Ratliff*, 256 F.3d at 359 n.3).

15

evidence. And fifth, the plaintiff in *Kanida* was free to argue that actual discriminatory intent was the proper inference to draw from evidence that the employer's purported reasons for its actions were mere pretext.[5]

Other federal circuits have split on this question, taking similar positions to those found in either *Ratliff* or *Kanida*. *Compare Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232 (10th Cir. 2002), *Smith v. Borough of Wilkinsburg*, 147 F.3d 272 (3d Cir. 1998), and *Cabrera v. Jakabovitz*, 24 F.3d 372 (2d Cir. 1994) (holding permissive-pretext instruction is required), with *Browning v. United States*, 567 F.3d 1038, 1041 (9th Cir. 2009), *Conroy v. Abraham Chevrolet–Tampa, Inc.*, 375 F.3d 1228 (11th Cir. 2004), *Moore v. Robertson Fire Prot. Dist.*, 249 F.3d 786 (8th Cir. 2001), *Fite v. Digital Equip. Corp.*, 232 F.3d 3 (1st Cir. 2000), and *Gehring v. Case Corp.*, 43 F.3d 340 (7th Cir. 1994) (holding or suggesting a permissive-pretext instruction is not required). The one other Texas court of appeals to address the issue has concluded that the instruction is not required. *See Collie v. IBEX Staffing Sols., Inc.*, No. 04-14-00269-CV, 2015 WL 1094825, at *3-4 (Tex. App.—San Antonio March 11, 2015, no pet.) (mem. op.) (tracking the reasoning in *Kanida*).

We join our sister court. Under Texas law, even instructions that are proper statements of the law are not required, and a failure to include a requested instruction constitutes reversible error only when the instruction in question was reasonably necessary to enable the jury to render a proper verdict. *See* Tex. R. Civ. P. 277 & 278; *Mandlbauer*, 34 S.W.3d at 911; *Arocha*, 203 S.W.3d at 445. We agree with the panel in *Kanida* that the United States Supreme Court's analysis in *Reeves* does not

---

[5] As mentioned above, the *Kanida* panel found itself bound by the precedent in *Ratliff* that the instruction was required; it therefore followed *Ratliff* while calling for en banc consideration of the issue. *See Kanida*, 363 F.3d at 574-77. The *Kanida* panel went on to hold, however, that the trial court's error in not including the permissive-pretext instruction was harmless. *Id.* at 578. As stated, we are not bound by Fifth Circuit precedent. *See Penrod Drilling*, 868 S.W.2d at 296.

16

mandate or suggest that a permissive-pretext instruction should be given. *Kanida*, 147 F.3d at 574-76. As in *Kanida*, the jury here was properly instructed both regarding Johnson's ultimate burden and the jury's own ability to draw reasonable inferences from the evidence. *Id*. at 577. Johnson was also able to and did explain to the jury in closing argument how it could infer discriminatory intent from the evidence. *See id*. Under the circumstances, the trial judge may have reasonably concluded that including a permissive-pretext instruction could have caused juror confusion regarding what inferences should or should not be drawn from the evidence. *See id*. at 576. Such a specific instruction was not reasonably necessary for the jury to render a proper verdict. Consequently, the trial judge did not abuse his discretion. *In re V.L.K.*, 24 S.W.3d at 341.

We overrule Johnson's third issue.

### III.    Destruction of Video Evidence

In his fourth issue, Johnson asserts that the trial court abused its discretion in determining that NOV only negligently, as opposed to intentionally, destroyed the video evidence that purportedly showed the incident that led to Johnson's termination. In issue five, Johnson contends that the trial court erred in failing to order a remedy for destruction of the video that would have restored Johnson's ability to prove his case. After a hearing on spoliation, the trial court determined that NOV negligently destroyed the video, or allowed it to be destroyed, and ordered the parties not to discuss the video, but the court refused to give the jury an instruction on spoliation.

#### A. Law on Spoliation

It is a fundamental tenet of our legal system that trials should be decided on the merits, but when one party destroys evidence or permits evidence to be

17

destroyed, this can make fair presentation of the merits difficult. *Brookshire Bros. v. Aldridge*, 438 S.W.3d 9, 13, 16 (Tex. 2014). Conversely, the imposition of severe sanctions can shift the focus of a case from the merits to the gravity of the spoliating party's improper conduct. *Id*. at 13. A spoliation jury instruction—which informs the jury that it must presume that the missing evidence would have harmed the spoliating party's position—is a severe sanction. *Id*. at 13, 22. Indeed, the "very purpose" of the spoliation instruction is to "nudge or tilt the jury toward a finding adverse to the alleged spoliator." *Id*. at 17 (quoting *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 724 (Tex. 2003)). Accordingly, a spoliation instruction is warranted only when (1) the spoliating party acted with *specific intent* to conceal discoverable evidence and a less severe remedy would be insufficient to reduce the prejudice to the nonspoliating party or (2) the spoliating party *negligently* failed to preserve evidence and the nonspoliating party has thereby been deprived of any meaningful ability to present a claim or defense. *Id* at 14.

Whether a party spoliated evidence and whether a particular remedy is appropriate are questions of law for the trial court. *Id*. at 14, 20. We review the trial court's determinations on these issues under an abuse of discretion standard. *Id*. at 27.

To hold that a party spoliated evidence, a trial court must find that the party had a duty to preserve the evidence and intentionally or negligently breached that duty. *Id*. at 14. Any remedy imposed for spoliation must have a direct relationship with the offensive conduct and the offender and be no more severe than necessary to satisfy its legitimate purpose. *See id*. at 21. The purpose of any sanction for spoliation is "to impose an appropriate remedy so that the parties are restored to a rough approximation of what their positions would have been were the evidence available." *Id*. at 18 (citing *Wal–Mart Stores*, 106 S.W.3d at 721).

18

When the proper standard of review is abuse of discretion, challenges to the sufficiency of the evidence are not independent grounds for reversal but instead are factors to be considered in determining whether the trial court abused its discretion. *In re J.R.P.*, 526 S.W.3d 770, 777 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *Id*. Evidence is factually sufficient if it is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id*. The factfinder is the sole judge of the witnesses' credibility and the weight to be given their testimony, and we may not interfere with the factfinder's resolution of conflicts in the evidence. *Id*.

After assessing the sufficiency of the evidence, we determine whether, based on the evidence, the trial court made a reasonable decision. *Id*. We will affirm the decision unless it is arbitrary or unreasonable or without reference to guiding rules or principles. *Id*.

### B. Additional Background

At a hearing on Johnson's motion for a spoliation instruction, the trial court heard from six witnesses regarding the loss of the video. Garcia, Evans, and another NOV employee, Harvey Sterling, viewed the video from a security system server. Sterling's description of the video largely matched a timeline of the video that Garcia had emailed to Laing on the same day that she viewed the video. Evans stated that he considered the video cumulative of statements made by Johnson, Sierra, and Amador.

According to Sterling, after Garcia asked him to make a copy of the video, he gave the camera technician a USB drive on which to make a copy, and the technician returned the USB drive on the same day. Sterling stored the USB drive in an unlocked file cabinet, but Garcia never retrieved or otherwise obtained it. After

19

Johnson filed his EEOC charge, Sterling retrieved the USB drive but was unable to get the video to play.[6] Sterling then asked an NOV IT employee, Jonathan McDonald, to see if he could pull the video data file from the drive.[7] McDonald testified that although he believed he was able to recover the data file, it was not playable. He then sent the USB drive to two data recovery companies that were also unable to recover a playable video file. The server on which the video was originally recorded was set to delete files automatically after a period of time, so the original data was no longer available by this time.

According to Johnson, when he requested the video in September 2014, NOV initially responded just that the video was "unavailable" but then subsequently clarified that it had been overwritten after 21 days. Johnson further asserts that NOV did not reveal the existence of the USB drive until Johnson deposed Sterling.[8] Johnson thereafter made the USB drive the subject of both a motion for sanctions and a motion to compel. The trial court denied the sanctions motion but compelled NOV to produce information regarding the video and the USB drive. At this point, NOV produced a CD with files allegedly recovered from the USB drive but not a playable version of the video.

Johnson's IT expert, Carlos Townsend, testified that he was able to recover even more files from the USB drive. Townsend testified that he "pretty much" was

---

[6] Garcia acknowledged that there had been intermittent problems copying videos from that particular server.

[7] As Johnson notes, there appears to be some discrepancy in the color or colors of the USB drive as described by Sterling and McDonald, although in his testimony at the hearing, McDonald stated that he really did not remember the color.

[8] Johnson does not provide citation to the voluminous record for many of his assertions. Furthermore, some of the provided citations are not to relevant portions of the record. *See, e.g., Univ. Gen. Hosp., LP v. Prexus Health Consultants, LLC*, 403 S.W.3d 547, 557 n.6 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (explaining that appellate court is not required to make an independent search of a voluminous record for evidence supporting a party's position).

able to view at least a portion of all of the video files on the USB drive except for the video of the incident that precipitated Johnson's termination.[9] He further stated that he found it "quite odd" that the USB drive appeared to be blank before recovery software was used on it. He indicated that typically after deletion, information would still be visible on the drive. On cross-examination by NOV's counsel, Townsend acknowledged that there was no indication that various ways to intentionally remove data had been used on the USB drive, including use of a wiping tool, renaming the file, reformatting, or putting a magnet next to the drive. He further acknowledged that multiple files had been copied to the USB drive over a period of time.

As stated above, the trial court found that NOV negligently destroyed the video and ordered the parties not to discuss the video but refused to find that the destruction was intentional and refused to give the jury an instruction on spoliation as Johnson requested.

### C. Negligent Destruction

We first turn to Johnson's complaint that the trial court abused its discretion in determining that NOV's destruction of the video was only negligent and not intentional. Although Johnson appears to concede that there is no direct evidence that NOV intentionally destroyed the video, he insists that the trial court should have inferred intent from the circumstances.[10] *See Tex. First Nat'l Bank v. Ng*, 167 S.W.3d 842, 853 (Tex. App.—Houston [14th Dist.] 2005, judgm't vacated w.r.m.) ("Intent may certainly be proven by circumstantial evidence."). Johnson specifically alleges

---

[9] The file name included a date and time identification code that was from the same date and time as the incident.

[10] Johnson also asserts that the trial court erred in failing to consider the entire record in making its spoliation determination, citing *Mercedes-Benz USA, LLC v. Carduco, Inc.*, No. 13-13-00296-CV, 2016 WL 1274535, at *26 (Tex. App.—Corpus Christi Mar. 31, 2016, pet. filed) (mem. op.). However, he does not cite any place in the record suggesting the trial court failed to consider the entire record, and NOV denies that this occurred.

that the record shows that NOV: (1) delayed revealing the existence of the USB drive, (2) made inconsistent statements regarding the contents of the USB drive, and (3) failed to keep the USB drive safe and permitted other employees to use it for other purposes. Johnson further relies on other alleged conduct by NOV or its counsel in supposedly lying about having produced all human resources documents relating to the case, defying the trial court's order to choose a neutral computer forensics company relating to a search of NOV databases on another matter (see below), and the allegedly unexplained relationship between NOV's counsel and the selected forensics company in another case.

The trial court could well have considered all of these matters. But the court may also have found the testimony of the NOV employee-witnesses credible. *See In re J.R.P.*, 526 S.W.3d at 777; *see also Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 371 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony." (quoting *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986))). Even if the judge believed NOV delayed, concealed, and obfuscated after litigation began, it does not mean that the judge also had to conclude that the employees were lying about what happened with the USB drive. As set forth above, evidence supports the conclusions that the security server on which the video was originally kept automatically deleted the video before Johnson filed his EEOC charge, and an attempt was made to copy the video onto a USB drive but either the transfer process was unsuccessful (the server apparently had a history of such problems) or the video file was subsequently lost as the USB drive was reused multiple times. Although Johnson's IT expert, Townsend, found it "odd" that the USB drive appeared blank when viewed without the use of recovery software, he did not expand on whether

22

this suggested foul play of any sort, and he agreed that there was no evidence that a number of ways to intentionally destroy data on a USB drive had been utilized.

Based on the available evidence, the trial court reasonably concluded that the destruction of the video was due to NOV's negligence and was not intentional. The evidence indicates that NOV did not do enough to keep the video file protected, but the evidence does not mandate a finding of intentional destruction. Accordingly, we overrule Johnson's fourth issue.

### D. Spoliation Remedy

Johnson additionally argues that even if the trial court properly found that NOV only negligently destroyed the video, the court abused its discretion in not granting a remedy for spoliation that would have effectively returned him to the position that he would have been in had spoliation not occurred. *See Brookshire Bros.*, 438 S.W.3d at 18. Johnson asserts the trial court should have imposed three additional remedies that it did not, i.e., the court should have: (1) awarded Johnson his attorney's fees, costs, and expenses relating to spoliation; (2) given a spoliation instruction to the jury based on the finding of negligent destruction by NOV; and (3) told the jury that NOV claimed that it had the video but then deleted it without saying whether such destruction was intentional or negligent. For the following reasons, we conclude that none of Johnson's arguments have merit.

As the court in *Brookshire Brothers* emphasized, a trial court has broad discretion in fashioning an appropriate remedy for spoliation, and such remedy could certainly include an award of attorney's fees, costs, and expenses to the nonspoliating party. 438 S.W.3d at 14, 21. Johnson, however, addresses this potential remedy in only half of one sentence in his brief. He offers neither any particular argument nor any citation to the record in support of this proposed remedy. *See* Tex. R. App. P. 38.1(i) (requiring that an appellant's brief must contain a "clear

23

and concise argument for the contentions made, with appropriate citations to authorities and to the record"). Specifically, Johnson does not assert that he established what amount of fees, costs, and expenses were attributable to the spoliation issue, and he offers no citation to any such proof in the record. Accordingly, Johnson has waived this argument on appeal. *See, e.g., Bruce v. Cauthen*, 515 S.W.3d 495, 512 (Tex. App.—Houston [14th Dist.] 2017, pet. denied); *Thomas v. Olympus/Nelson Prop. Mgmt.*, 148 S.W.3d 395, 401 (Tex. App.—Houston [14th Dist.] 2004, no pet.).[11]

Next, Johnson is correct that in *Brookshire Brothers*, the supreme court indicated that a spoliation instruction might be warranted when the spoliating party negligently failed to preserve evidence and the nonspoliating party has thereby been deprived of any meaningful ability to present a claim or defense. 438 S.W.3d at 14. The court cautioned, however, that this would be a rather rare circumstance. *Id*. Undoubtedly, the video would have been an important piece of evidence in this case, as it reportedly showed the incident for which Johnson was ostensibly terminated. We cannot say, however, that the trial court abused its discretion in determining that the absence of the video deprived Johnson of any meaningful ability to present his case.

Johnson does not dispute that during the incident in question, he closed the doors to his machine and set the machine after Sierra placed the tag on the machine's control panel. This is indeed what Garcia and Sterling said that the video showed

---

[11] Although not referenced by Johnson, it appears that he filed a post-judgment motion for attorney's fees, expenses, and costs relating to the spoliation issue and his fifth motion for sanctions (discussed below). The motion and attached documentation generally does not differentiate between fees related to spoliation and fees related to other items covered in the fifth sanctions motion. Moreover, Johnson offers no explanation as to why this motion should be considered timely. Regardless, Johnson has not properly presented his argument on appeal. *See Bruce*, 515 S.W.3d at 512; *Thomas*, 148 S.W.3d at 401.

and is what NOV claims was a LOTO violation. With one exception, the key disputes in this case were not so much about what happened but whether Johnson's conduct amounted to a LOTO violation, whether the alleged violation was serious enough to merit termination, and whether race was a motivating factor in Johnson's termination. The one point of disagreement regarding the incident that Johnson references and the video may have helped resolve concerned whether Sierra pressed the stop button on Johnson's control panel when he placed the tag on the panel. Sierra claimed that he pressed the button and that this deenergized the machine. Johnson testified that Sierra did not press the button and that, even if he had, it would not have deenergized the machine. While we do not know whether the video would have resolved this factual dispute, it certainly would have been preferable for the jury to be able to see it. However, as noted, Johnson's case did not turn on resolution of that one dispute. Accordingly, the trial court did not abuse its discretion in refusing to give the spoliation instruction in light of its determination that NOV negligently spoliated the evidence.

Lastly, Johnson argues that the trial court should have, in the absence of a spoliation instruction, informed the jury that NOV claimed it had a video that supported its reason for terminating Johnson but also claimed that the video was deleted. Johnson suggests that this information could have been imparted without referencing whether the destruction of the video was intentional. This approach would have essentially left it up to the jury to determine whether spoliation occurred and what to make of the video's destruction. The court in *Brookshire Brothers*, however, clearly rejected such an approach when it emphasized that "the trial court, rather than the jury, must determine whether a party spoliated evidence and, if so, impose the appropriate remedy." *Id*. at 20.

Finding no merit in any of Johnson's arguments concerning other potential

25

spoliation remedies, we overrule his fifth issue.

## IV.    Sanctions

In his sixth issue, Johnson contends that the trial court erred in refusing to sanction NOV and its counsel for allegedly disobeying court orders, lying about the reasons they failed to comply, and concealing documents and data. We review a trial court's decision to grant or deny sanctions for an abuse of discretion. *See Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam); *Clark v. Bres*, 217 S.W.3d 501, 515 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). When reviewing matters committed to the discretion of a trial court, we may not substitute our judgment for that of the court below. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam). Rather, our review is limited to deciding whether the trial court acted arbitrarily, unreasonably, or without reference to guiding rules or principles. *Am. Flood Research*, 192 S.W.3d at 583. A trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009) (per curiam). The party moving for sanctions bears the burden of overcoming the presumption that pleadings and other papers are filed in good faith. *See id*.

### A. The Motions

Johnson specifically references his first, fourth, and fifth motions for sanctions, although it is not entirely clear whether he is arguing on appeal that the trial court should have granted one, more, or all of these motions. Johnson's first motion for sanctions involved, among other things, NOV's failure to produce a written progressive discipline policy. Johnson requested the policy in discovery, but NOV claimed that it did not exist, despite the fact that Evans mentioned that he had received written "guidelines" in 2013 and Garcia stated that she thought they had a

26

written policy. In response to the motion, NOV continued to deny the document's existence. Although it is not clear whether the trial court expressly denied the motion, it is clear that the trial court did not grant the motion.

Johnson's fourth motion primarily concerned NOV's failure to produce an employee handbook referencing a progressive discipline policy.[12] Johnson asserted that he had discovered such a handbook in his own possession and recalled that it had been issued to him in 2008. NOV responded to this motion by asserting that it did not have such a policy and that the handbook Johnson discovered was not an NOV document. In support, NOV presented a declaration from its Vice President of Human Resources stating NOV had not had a "corporate-sponsored" handbook in place since at least 2007.

The trial court deferred a ruling on the fourth motion in order for a search of NOV's computer databases to be conducted by an outside IT firm, paid for by NOV. After Johnson rejected NOV's first two suggestions, NOV mentioned a firm based in Dallas called Stroz-Frieberg that NOV's counsel stated he had just learned about. Johnson neither agreed to nor rejected this firm on the record. The list of search terms was to be prepared by the outside firm, added to by Johnson, and then approved by the court before the search was performed. NOV subsequently reported to the trial court that the search conducted by Stroz-Frieberg found 13,552 documents matching various search terms and that it was producing 24 of those documents as responsive to discovery requests, but no progressive discipline policy was uncovered. NOV additionally stated that the total cost of the project was at least $50,000. The trial court refused to allow NOV to use any of the newly discovered

---

[12] Johnson's second motion for sanctions concerned emails that NOV allegedly failed to produce. Johnson's third motion concerned the spoliation claims discussed in a previous section of this opinion.

27

documents at trial but otherwise denied Johnson's fourth motion for sanctions.

Johnson's fifth motion concerned in relevant part whether NOV's counsel followed the trial court's instructions regarding the database search. Johnson alleged that his counsel did not agree to NOV using Stroz-Friedberg to conduct the search, and therefore, NOV violated the trial court's directives by using that firm. Johnson additionally alleged that NOV's counsel lied to the court in claiming that Johnson's counsel had agreed to using Stroz-Friedberg. In the motion, Johnson requested death penalty sanctions or, in the alternative, $50,000. NOV denied the allegations in the fifth motion. During a hearing on the motion, the trial judge stated that the search was not conducted as directed by the court but reserved action on the motion. The trial court ultimately did not impose any sanctions against NOV.

**B. Analysis**

Johnson's briefing on this issue reads as a litany of complaints, but it falls short of explaining why the trial court abused its discretion in declining to sanction NOV or its counsel. All three motions in question concerned NOV's failure to produce documents pertaining to a progressive discipline policy that NOV insists it did not have or follow. Johnson cites to vague references to such a policy by two NOV employees or former employees, Evans and Garcia, and to Johnson's assertion that he found such a policy in his own possession. NOV countered with a declaration from its human resources vice president who maintained that NOV did not have such a policy in place at the time of the incident that led to Johnson's termination. Moreover, the search of NOV's databases by an outside IT firm found no such policy. The trial court was therefore within its authority to conclude that no such policy existed. *See Unifund CCR Partners*, 299 S.W.3d at 97; *In re J.R.P.*, 526 S.W.3d at 777. If no such policy existed, there was no basis to sanction NOV for failure to produce such a policy.

28

That leaves Johnson's complaint that NOV failed to follow the procedures laid out by the trial court for the search of the databases. Indeed, the trial judge expressed frustration with this failure during the hearing on the fifth motion for sanctions. The judge also, however, expressed frustration with the "bickering" and "sniping" in the case from counsel for both sides. NOV filed its own motion for sanctions, complaining about Johnson's counsel's conduct during Johnson's deposition. The trial court ultimately did not sanction either side.

Based on the status updates NOV provided and the description of the search NOV offered at the sanctions hearing, the trial judge may have been satisfied with the outcome of the search and the search terms and methods used. The judge reasonably could have concluded that sanctions were not warranted because no progressive discipline policy was uncovered after NOV spent a reported $50,000 or more searching for one. Based on the record before us, we cannot say that these conclusions were arbitrary, unreasonable, or undertaken without reference to guiding rules or principles. *See Am. Flood Research*, 192 S.W.3d at 583. Accordingly, we overrule Johnson's sixth issue.[13]

## V. Evidentiary Rulings

Lastly, under issue seven, Johnson challenges the trial court's admission of certain evidence and exclusion of other evidence. We review a trial court's rulings on the admission or exclusion of evidence for an abuse of discretion. *See Brookshire Bros.*, 438 S.W.3d at 27. The complaining party must demonstrate that the judgment

---

[13] Johnson also points out that in his motion for new trial, he asserted that there was a preexisting connection between NOV's counsel and Stroz-Frieberg in that executives of Stroz-Frieberg supposedly had "family ties with the Apache Corporation," which was also a client of NOV's counsel. Johnson, however, does not cite any evidence establishing the alleged family connection or whether NOV's counsel was aware of any such connection. In its briefing, NOV denies the alleged connection exists.

turns on the particular evidence that was excluded or admitted. *Hooper v. Chittaluru*, 222 S.W.3d 103, 107 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). We will not reverse a judgment based on an erroneous evidentiary ruling when the evidence in question was cumulative or not controlling on a material issue dispositive to the case. *See id*.

Johnson specifically argues that the trial court should not have admitted into evidence the EEOC charge that he filed against NOV. NOV apparently introduced this evidence to suggest that Johnson's allegations had changed or evolved over time. Additionally, Johnson argues that the trial court should have permitted him to introduce evidence of other incidents at NOV involving other employees who were not terminated for alleged safety violations. For the following reasons, we are unable to consider the merits of either of these assertions.

### A. The EEOC Charge

In his brief, Johnson suggests that the EEOC charge was inadmissible for three reasons: (1) affidavits are not generally admissible as evidence in a contested trial, citing *Roberts v. Mullen*, 446 S.W.2d 86 (Tex. Civ. App.—Dallas 1969, writ ref'd n.r.e.) and *Stephens v. City of Reno*, 342 S.W.3d 249, 253 (Tex. App.—Texarkana 2011, no pet.)[14]; (2) the charge contained hearsay; and (3) the charge "included employees NOV claimed were not proper comparators to Johnson." Johnson, however, does not cite where in the record he made any of these objections in the trial court.

When NOV first moved to admit the EEOC charge into evidence, the trial judge asked Johnson's counsel for her objection. Counsel responded only that "[i]t's

---

[14] Johnson's EEOC complaint included a notarized statement by Johnson, but it was not an affidavit per se.

not admissible under the Rules of Evidence. It's never admitted in employment cases." Apart from these general pronouncements, counsel did not offer any specific legal or other basis for her objection.[15] The trial judge, however, deferred his ruling on the charge's admissibility until the next day. When the issue was again raised, the judge asked Johnson's counsel whether she had any authority suggesting that the charge was inadmissible and whether she had had a chance to review the authority NOV provided, i.e., *Wawarosky v. Fast Group Houston Inc.*, No. 01-13-00466-CV, 2015 WL 730819, at *5 (Tex. App.—Houston [1st Dist.] Feb. 17, 2015, no pet.) (mem. op.) (holding EEOC charge was admissible as a public record under Tex. R. Evid 803(8)). Counsel stated that she did not have any authority and had not read the case provided by NOV. She made no further objection, and the judge admitted the charge.

As stated above, to preserve an issue for appellate review, a party must make a timely request, objection, or motion stating the specific grounds for the desired ruling if they are not apparent from the context. Tex. R. App. P. 33.1(a). Johnson's counsel's general statement that the EEOC charge was inadmissible did not preserve any complaint for our review. *See, e.g., In re A.A.*, No. 01-13-00542-CV, 2013 WL 6569922, at *17 (Tex. App.—Houston [1st Dist.] Dec. 12, 2013, pet. denied) (mem. op.); *Lege v. Jones*, 919 S.W.2d 870, 874 (Tex. App.—Houston [14th Dist.] 1996, no pet.). Accordingly, we do not address the merits of Johnson's arguments on appeal.

**B. Evidence of Comparators**

Regarding the fifteen exhibits Johnson contends the trial court erred in excluding, Johnson acknowledges that these exhibits are not in the record. In a

---

[15] Counsel specifically told the trial judge: "It's not hearsay."

footnote in his initial brief, Johnson states that he "will supplement with an appendix that includes these exhibits in his Reply Brief." Although Johnson subsequently filed a reply brief, it did not have an appendix. And, even if it did, we cannot consider documents attached to a brief that are not part of the appellate record. *See In re Marriage of Farmer*, No. 14-17-00077-CV, 2018 WL 2247380, at *2 (Tex. App.—Houston [14th Dist.] May 17, 2018, pet. denied) (mem. op.); *In re C.C.E.*, 530 S.W.3d 314, 317, n.1 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Accordingly, Johnson has presented nothing to review in regards to the fifteen exhibits. *See, e.g., Melendez v. Exxon Corp.*, 998 S.W.2d 266, 278 (Tex. App. 1999) ("The burden is on the complaining party to present a sufficient record to the appellate court to show error requiring reversal.").

We overrule Johnson's seventh issue.

### *Conclusion*

Having overruled each of Johnson's underlying substantive issues, we also overrule his first issue concerning denial of his motion for new trial based on the same arguments.

We affirm the trial court's judgment.


/s/    Martha Hill Jamison
        Justice


Panel consists of Justices Boyce, Jamison, and Brown.