**Reversed and Rendered and Memorandum Opinion filed January 14, 2020.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00483-CV

---

### JEFF FISHER, Appellant

### V.

### EAGLE ROCK CUSTOM HOMES INC. AND MACK DAVIS, Appellees

---

**On Appeal from the 334th District Court
Harris County, Texas
Trial Court Cause No. 2017-77671**

---

## MEMORANDUM OPINION

Jeff Fisher brings this interlocutory appeal from the trial court's order denying his special appearance.[1] Appellees Eagle Rock Custom Homes Inc. and Mack Davis sued Fisher for fraudulent inducement, common law fraud, constructive fraud, and negligent misrepresentation. In his special appearance, Fisher contended that he is a Hong Kong resident who lacks sufficient contacts

---

[1] *See* Tex. R. Civ. P. 120a; Tex. Civ. Prac. & Rem. Code § 51.014(a)(7).

with Texas to support personal jurisdiction over him. Concluding that Fisher negated all pleaded bases for jurisdiction and appellees failed to show Fisher had sufficient contacts with Texas to support jurisdiction, we reverse the trial court's order denying Fisher's special appearance and render judgment dismissing the case for want of jurisdiction.

## I. Background

In their petition, appellees asserted that Fisher is a Texas resident who conducted business in Texas. They further alleged that appellee Eagle Rock is a home building company that had been doing business with a company known as Blevesco (a Fisher-related entity) when Fisher approached Eagle Rock with a proposal for creating a joint venture with other entities Fisher controlled for the purpose of developing properties. According to appellees, lots were to be deeded to Eagle Rock to enable it to procure construction loans from a third party lender or another entity Fisher controlled. As the projects progressed, problems began to arise, such as slow funding and deeds not being transferred to Eagle Rock, causing sales to be lost and fees to rise. Appellees allege that Fisher made false representations regarding the lots and construction loans to mislead Eagle Rock and Davis.[2] Appellees further allege that Fisher's failure to properly transfer properties to Eagle Rock, adding fees to lot purchases, and taking funds that did not belong to the entities Fisher controlled resulted in such financial losses as to force Eagle Rock out of business and cause Davis significant debt resulting from his personal guarantees to vendors. On this basis, appellees asserted claims against Fisher for fraudulent inducement, common law fraud, constructive fraud, and negligent misrepresentation.

---

[2] Although not stated in the petition, Davis is purportedly Eagle Rock's founder and president.

2

In his special appearance and attached affidavit, Fisher asserted that he is a Hong Kong resident without significant contacts with Texas. He stated that he has lived in Hong Kong since 1997 and attached his United States tax returns and Hong Kong identification card as proof. Fisher acknowledged that he visited his parents a couple of times a year in Texas and that he maintained a Texas driver's license so that he could drive on those visits. Fisher further stated that he was formerly a manager or investor in companies that do business in Texas, but he personally does not own any property, have any bank accounts, or conduct any business in the state.

Appellees responded to the special appearance by citing other Texas court cases in which Fisher allegedly made certain statements, including that he had bought properties in the state for himself through limited liability companies and had requested the court to treat a particular matter as a direct action for his personal benefit. Also, appellees asserted that in an unsworn declaration in one of these other cases, Fisher represented his home address as being in Spring, Texas. Appellees further stated that Fisher had numerous in person meetings with Davis and other representatives of Eagle Rock.

The only document attached to appellees' response was an affidavit by Davis in which he averred that he was first introduced to Fisher at Blevesco's offices in Harris County, after which Blevesco and Eagle Rock entered into joint venture agreements for the construction of new homes. According to Davis, after several successful projects, Fisher approached Eagle Rock with a proposal for entities owned and controlled by Fisher to provide both the lots and financing for future projects. Eagle Rock then began the projects with various Fisher entities. Davis further asserted that during their business dealings he had numerous in person meetings with Fisher at the Blevesco office and at a local restaurant. Davis

said that Fisher was always his contact through the years of doing business with the Fisher entities. In a reply, Fisher insisted that his attendance at any meetings with Davis was only in his capacity as a representative of a company.

The trial court held a hearing on the special appearance at which no witnesses testified and no exhibits were offered into evidence. During the hearing, Fisher's counsel acknowledged that Fisher was the managing director of several Delaware companies that did business in Texas, purchasing lots and building on the lots. And counsel admitted appellees' claims might be valid against Fisher's companies. But he insisted that no claims were valid against Fisher in his individual capacity because there was no proof to support allegations of alter ego or other veil-piercing theories. Counsel further acknowledged that at the time he made the statement or statements that were alleged to be fraudulent, Fisher was in Texas, but it is not clear whether counsel was simply basing that on the controverting affidavit by Davis, which he referenced, or if he was intending to admit the truth of the contention. Fisher's counsel further acknowledged Fisher had filed a lawsuit in Texas against another party.

Appellees' counsel asserted at the hearing that Fisher personally made representations in Texas to induce appellees into the joint ventures.[3] Appellees' counsel further stated that in the course of other litigation in Harris County, Fisher had filed affidavits representing his home address to be in Spring, Texas and had signed a settlement agreement in Texas. It appears from the transcript that appellees' counsel may have handed the judge at least one purported affidavit and the judge then handed it to Fisher's counsel, but no such affidavit was offered or admitted into evidence or appears in the record on appeal.[4] Appellees' counsel also

_____

[3] This was the first point at which such an allegation was made in this case.

[4] Although appellees attached copies of purported court filings to their brief, these

4

indicated that he had witnesses prepared to testify that Fisher had filed for unemployment benefits in Texas, but, as stated, no witnesses testified at the hearing

At the conclusion of the hearing, the trial judge denied Fisher's special appearance. The judge did not enter findings of fact or conclusions of law.

## II. Standards of Review

Whether a court has personal jurisdiction over a defendant is a question of law we review de novo. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). When, as here, the trial court does not enter findings of fact or conclusions of law, we imply all facts necessary to support the trial court's ruling that are supported by the evidence. *Id.* The ruling may be challenged for legal and factual sufficiency. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *Id.* at 827. Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the conclusion under review. *Id.* In a factual-sufficiency challenge, we consider and weigh all the evidence, both supporting and contradicting the finding. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We will set aside a finding for factual insufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 407.

documents are not in the appellate record and are not certified.

Texas courts may exercise personal jurisdiction over a nonresident if "(1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). The Texas long-arm statute extends Texas courts' personal jurisdiction as far as the federal constitutional requirements of due process will permit. *BMC Software*, 83 S.W.3d at 795.

Personal jurisdiction over a nonresident is constitutional when two conditions are satisfied: (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Id*. (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Minimum contacts are sufficient for personal jurisdiction when the nonresident purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Moki Mac*, 221 S.W.3d at 575. In a purposeful-availment inquiry, (1) only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person; (2) the contacts relied on must be purposeful rather than random, fortuitous, or attenuated; and (3) the defendant must seek some benefit, advantage, or profit by "availing" himself of the jurisdiction. *Id*. The analysis contemplates the quality and nature of the contacts, not the quantity. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 339 (Tex. 2009). At its core, the purposeful-availment analysis seeks to determine whether a nonresident's conduct and connection to a forum are such that he could reasonably anticipate being haled into court there. *Moncrief Oil*, 414 S.W.3d at 152.

A defendant's contacts can vest a court with either specific or general

jurisdiction. *BMC Software*, 83 S.W.3d at 795–96. In determining whether specific jurisdiction exists, the minimum-contacts analysis focuses on the relationship between the defendant, the forum, and the litigation. *Moki Mac*, 221 S.W.3d at 575–76. Specific jurisdiction is established if the defendant's alleged liability arises out of, or is related to, an activity conducted within the forum. *Id*. at 576; *BMC Software*, 83 S.W.3d at 796. For a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585.

"[G]eneral jurisdiction is only present when a defendant not only has continuous and systematic contacts with the forum state, but also has these kinds of contacts to such an extent that they render it essentially at home in that state." *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 72–73 (Tex. 2016). Because general jurisdiction permits a court to exercise personal jurisdiction over a nonresident for claims not directly linked to his contacts with the state, a general jurisdiction inquiry requires a more demanding minimum-contacts analysis with a "substantially higher threshold." *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 168 (Tex. 2007).

In a special appearance, the parties bear shifting burdens. "[T]he plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute." *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). "Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff." *Id*. "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the

7

plaintiff's pleading." *Id*. A defendant can negate jurisdiction on either a factual or a legal basis. *Id*. at 659. To negate jurisdiction on a factual basis, the defendant must "present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations." *Id*. To negate jurisdiction on a legal basis, a defendant may show that even if the plaintiff's alleged facts are true, (1) the evidence is legally insufficient to establish jurisdiction; (2) the defendant's contacts with Texas do not amount to purposeful availment; (3) for specific jurisdiction, the plaintiff's claims do not arise from the defendant's contacts; or (4) the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *Id*.

If the nonresident defendant manages to negate the pleaded bases for personal jurisdiction, the burden shifts back to the plaintiff to show that the court has personal jurisdiction over the defendant. *Turman v. POS Partners, LLC*, 541 S.W.3d 895, 900 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Although personal jurisdiction is generally assessed on a claim-by-claim basis, a separate analysis for each claim is not required when jurisdiction for all claims is alleged to arise from the same forum contacts. *See Moncrief Oil*, 414 S.W.3d at 150–51; *Syrian Am. Oil Corp. v. SSPD Petroleum Dev.*, 01–10–00224–CV, 2011 WL 1328373, at *6 (Tex. App.—Houston [1st Dist.] Feb. 24, 2011, no pet.) (mem. op.).

### III. Discussion

We begin our analysis by considering whether and how appellees met their initial burden to plead jurisdictional facts to bring Fisher within reach of the Texas long-arm statute. *See Kelly*, 301 S.W.3d at 658. As set forth above, in their petition, appellees pleaded generally that Fisher is a Texas resident and that the court had "jurisdiction over the parties because Defendant conduct[s] business in Texas." In their response to Fisher's special appearance, appellees alleged that

8

"numerous entities doing business in Harris County . . . are alter ego's [sic] of Fisher. Appellees also referenced other Texas court cases in which Fisher reportedly made appearances and certain statements, including that he had bought properties in the state for himself through limited liability companies. Appellees assert that in one of these cases, Fisher requested that the court treat the matter as a direct action for his personal benefit and represented in an unsworn declaration that his home address was in Spring, Texas. Appellees further allege that "Fisher has had many in person meetings with Mack Davis and other employees and associates of Eagle Rock." These statements in the petition and response are the jurisdictional allegations that Fisher was required to negate to be successful in his special appearance. *See, e.g., Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (explaining that courts look to the plaintiff's pleadings as well as the response to the special appearance to determine the jurisdictional allegations).

In his special appearance and affidavit, Fisher averred that he is a long-time resident of Hong Kong and does not personally own any property or conduct any business in Texas. Fisher acknowledged that he was formerly a manager or investor in companies that do business in Texas but again emphasized that he does not personally conduct any business in the state. Fisher further stated that he visits his parents in Texas a couple of times a year and has a Texas driver's license in order to drive when he visits.

At no point in the proceedings did appellees specify whether they were attempting to establish that Texas has specific or general jurisdiction over Fisher or both, but some of their allegations could be relevant to both types of jurisdiction. Accordingly, we will analyze both options. We first note, however, that although appellees alleged in their petition that Fisher was a Texas resident, Fisher denied

9

he was a Texas resident in his special appearance and his affidavit, and he provided documentary evidence (tax returns and a Hong Kong identification card) to support his assertion that he is a resident of Hong Kong. Moreover, appellees provided no evidence supporting the assertion that Fisher is a Texas resident. Although appellees alleged in their response that Fisher had represented in another lawsuit that his home address is in Spring, Texas, they did not offer any supporting evidence into the record below. Appellees suggest the trial court took judicial notice of the records from other courts, but they cite no place in the record where they requested the court take judicial notice or the court did so. "[A] court will take judicial notice of another court's records if a party provides proof of the records." *Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 623 (Tex. 2012) (per curiam) (citing *WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 459 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) ("A court cannot take judicial notice of the records of another court in another case unless a party provides proof of those records. . . . [Appellant] does not cite to any proof that he provided the trial court regarding the prior lawsuit, and we have discovered none in the record.")). Also, although appellees attached unofficial, uncertified copies of some documents to their brief, we are not able to consider these documents. *See Johnson v. Nat'l Oilwell Varco, LP*, 574 S.W.3d 1, 20 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("[W]e cannot consider documents attached to a brief that are not part of the appellate record."); *see also Perez v. Williams*, 474 S.W.3d 408, 419 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("The contents of an unauthenticated or uncertified record from another court are not the type of evidence of which the court can take judicial notice."); *Ex parte Wilson*, 224 S.W.3d 860, 863 (Tex. App.—Texarkana 2007, no pet.) ("Judicial records . . . from a domestic court other than the court being asked to take judicial notice have not been deemed so easily ascertainable that no proof is required; they are to be

established by introducing into evidence authenticated or certified copies . . . .").[5]

## A. General Jurisdiction

As explained above, general jurisdiction contemplates whether a defendant has such continuous and systematic contacts with the state that he is "essentially at home in th[e] state." *Searcy*, 496 S.W.3d at 72–73. A general jurisdiction inquiry sets a "substantially higher threshold" than does an inquiry into specific jurisdiction. *PHC-Minden, L.P.*, 235 S.W.3d at 168. "A general jurisdiction inquiry can be tedious, as it 'demands . . . . that all contacts be carefully investigated, compiled, sorted, and analyzed for proof of a pattern of continuing and systematic activity.'" *Id*. at 170 (quoting *Schlobohm v. Schapiro*, 784 S.W.2d 355, 359 (Tex. 1990)). Four sets of appellees' allegations appear aimed at or relevant to establishing whether Fisher had continuous and systematic contacts with Texas: (1) Fisher controlled several entities that did business in Texas as his alter egos, (2) Fisher or the entities participated in lawsuits in Texas, (3) Fisher had in-person meetings in Texas with Davis and other representatives of Eagle Rock, and (4) Fisher visited his parents in Texas and had a Texas driver's license.

Regarding the alter ego claims, although the burden in a special appearance generally shifts to the defendant once the plaintiff or plaintiffs have raised sufficient jurisdictional allegations, the burden in regards to alter ego claims is an exception to that rule. The burden of piercing the corporate veil and demonstrating a corporation was used as an alter ego is always on the plaintiff. *See BMC Software*, 83 S.W.3d at 798-99; *Washington DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 738-39 (Tex. App.—Houston [14th Dist.] 2013, pet.

---

[5] Fisher has filed a motion to strike the documents attached to appellees' brief. This motion was taken with the case. We now deny that motion as moot. *See Saldana-Fountain v. Chavez Law Firm*, 450 S.W.3d 913, 915 n.1 (Tex. App.—El Paso 2014, no pet.).

denied). This is because Texas law imposes a rebuttable presumption that a corporation is a separate entity from its officers and shareholders. *See BMC Software*, 83 S.W.3d at 798-99; *Washington DC Party Shuttle*, 406 S.W.3d at 738-39. Here, appellees did not present any evidence to pierce the corporate veil between Fisher and any entities that do business in Texas. *See BMC Software*, 83 S.W.3d at 799 (rejecting general jurisdiction claim based on activity of separate corporation where there was no evidence in the record to support any implied findings of alter ego).

As discussed above, appellees' assertion that Fisher or entities he controlled participated in litigation in Texas is also unsupported by evidence. Fisher averred that he did not conduct any personal business in Texas. Appellees referenced lawsuits allegedly involving Fisher or entities controlled by Fisher in Texas courts, both state and federal. However, appellees did not provide any evidence to support these allegations. *See WorldPeace*, 183 S.W.3d at 459 ("A court cannot take judicial notice of the records of another court in another case unless a party provides proof of those records."). Moreover, mere participation in a lawsuit does render a person subject to general jurisdiction. *Zamarron v. Shinko Wire Co.*, 125 S.W.3d 132, 143 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("Voluntarily filing a lawsuit in a jurisdiction is purposeful availment of the jurisdiction's facilities and can subject a party to personal jurisdiction in another lawsuit only when the lawsuits arise from the same general transaction."); *see also Waterman S.S. Corp. v. Ruiz*, 355 S.W.3d 387, 422 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (following *Zamarron*). Appellees do not allege that these prior lawsuits were in any way related to the present lawsuit.

Next, appellees assert Fisher had meetings in Texas with Davis and other representatives of Eagle Rock. Although Fisher did not expressly deny he

12

participated in some meetings in Texas, he insisted that he did so only as a company representative. While a corporate officer may not escape liability where he had direct, personal participation in wrongdoing, *see Tabacinic v. Frazier*, 372 S.W.3d 658, 669 (Tex. App.—Dallas 2012, no pet.), for general jurisdiction purposes, simply stating that the defendant attended meetings in state is not sufficient. *See Wellness Wireless, Inc. v. Vita*, No. 01-12-00500-CV, 2013 WL 978270, at *9 (Tex. App.—Houston [1st Dist.] Mar. 12, 2013, no pet.) (mem. op.) (discounting business meetings in Texas as evidence for general jurisdiction purposes where there was no evidence regarding the quantity, length, or purposes of the meetings). Here, apart from stating the meetings at Bleveso's offices and a restaurant were "numerous," Davis did not provide any details regarding the number, length, or subject matter of the alleged meetings.

Similarly, adding to those meetings the acknowledged facts that Fisher visited his parents a couple of times a year in Texas and had a Texas driver's license did not establish continuous and systematic contacts with Texas so as to support general jurisdiction. *See Luker v. Luker*, 776 S.W.2d 624, 625 (Tex. App.—Texarkana 1989, writ denied) (holding nonresident defendant who held Texas driver's license and made trips to the state three or four times a year in an automobile purchased and financed in Texas did not have sufficient contacts); *Wallace v. Holden*, 297 Or. App. 824, 832, 445 P.3d 914, 920 (Or. Ct. App. 2019) (collecting cases from other states, including *Luker*, and concluding a driver's license alone does not establish general jurisdiction); *Uche v. Allison*, 264 S.W.3d 90, 99 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("[O]ccasional travel to Texas is insufficient by itself to establish continuous and systematic contact."); *Moni Pulo Ltd. v. Trutec Oil & Gas, Inc.*, 130 S.W.3d 170, 179 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("[I]t is difficult to say that two or three

13

visits a year are continuous and systematic.").

Fisher negated appellees' general jurisdiction allegations in his affidavit, and appellees' failed to establish that Fisher had such continuous and systematic contacts as to render him subject to general jurisdiction in Texas. *See Searcy*, 496 S.W.3d at 72–73; *PHC-Minden, L.P.*, 235 S.W.3d at 168-70.

## B. Specific Jurisdiction

Specific jurisdiction contemplates whether the defendant's alleged liability arises out of, or is related to, an activity conducted within the forum. *See Moki Mac*, 221 S.W.3d at 576; *BMC Software*, 83 S.W.3d at 796. Three sets of appellees' allegations appear potentially aimed at establishing specific jurisdiction: (1) Fisher controlled several entities that did business in Texas as his alter egos, (2) Fisher participated in lawsuits in Texas, and (3) Fisher had in-person meetings in Texas with Davis or other representatives of Eagle Rock.

As discussed above, the burden to pierce the corporate veil of Fisher's companies allegedly conducting business in Texas was on appellees, *see BMC Software*, 83 S.W.3d at 798-99, and they failed to produce any evidence to support those allegations. Although an officer or employee of a corporation can be held liable for wrongdoing in which he participated without the need for piercing the corporate veil, *see Tabacinic*, 372 S.W.3d at 669, appellees did not allege and did not offer any evidence to show that Fisher committed any tortious conduct in Texas. Appellees asserted Fisher committed torts but did not say where. Appellees asserted Fisher had certain activities in and contacts with the state but did not allege that those were tortious behaviors. Consequently, the allegations that Fisher conducted business in Texas on behalf of corporations connected to him do not support an implied finding on specific jurisdiction. *Cf. Touradji v. Beach Capital P'ship*, 316 S.W.3d 15, 27–28 (Tex. App.—Houston [1st Dist.] 2010, no pet.)

(holding allegations that fraudulent representations were made in Texas were sufficient for specific jurisdiction purposes and distinguishing cases where similar allegations did not specifically mention the representations were made in the state).

Regarding the alleged participation of Fisher or Fisher-related entities in lawsuits in Texas, Fisher denied that he conducted any personal business in Texas and appellees failed to present any evidence to support the existence or details of the alleged lawsuits. Moreover, appellees have not alleged or shown that the prior lawsuits have any connection whatsoever to the torts alleged in the present case. Accordingly, the alleged lawsuits do not support an implied finding on specific jurisdiction. *Cf. Zamarron*, 125 S.W.3d at 143.

Lastly, appellees asserted that Fisher participated in "numerous" in-person meetings in Texas. However, as stated, appellees did not allege that Fisher committed a tort in Texas. They say he committed torts but do not say where. They say he had meetings in Texas, but do not assert fraudulent representations or other tortious conduct occurred in the state. Consequently, the allegation that Fisher participated in meetings in Texas does not support an implied finding on specific jurisdiction. *See Kelly*, 301 S.W.3d at 659-60 ("Regarding the fraud claim, [plaintiff] did allege several fraudulent acts . . . , but it did not allege that any fraudulent acts occurred in Texas."); *Baldwin v. Household Int'l, Inc.*, 36 S.W.3d 273, 277–78 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (holding allegations were insufficient to support specific jurisdiction when petition alleged fraudulent representations but did not allege where or when the misrepresentations occurred); *cf. Touradji*, 316 S.W.3d at 27–28 (holding allegations that expressly connected wrongful acts with Texas were sufficient).[6]

---

[6] In their appellate briefing, appellees suggest that Fisher's counsel made a judicial admission during the special appearance hearing when he replied "[y]es" after the trial judge

# IV. Conclusion

Fisher negated all pleaded bases for personal jurisdiction and appellees failed to establish Fisher had sufficient contacts with Texas to support jurisdiction. Accordingly, we reverse the trial court's order denying Fisher's special appearance and render judgment dismissing the case for want of personal jurisdiction.

/s/ Frances Bourliot
    Justice

Panel consists of Justices Christopher, Bourliot, and Zimmerer.

---

asked if Fisher was in Texas at the time he made the allegedly fraudulent statements. Setting aside the fact that this supposed admission was outside of the allegations made by appellees and thus that Fisher was charged with negating, we do not believe that counsel's response constituted a judicial admission. *See Kelly*, 301 S.W.3d at 658-59 & n.6; *WaterWorks Corral Creek, LLC v. AquaTech Saltwater Disposal LLC*, No. 03-16-00309-CV, 2018 WL 988907, at *9 (Tex. App.—Austin Feb. 21, 2018, pet dism'd) (mem. op.).

A judicial admission is a clear, deliberate, and unequivocal assertion of fact that makes the introduction of other evidence on an issue unnecessary. *See Anglo-Dutch Energy, LLC v. Crawford Hughes Operating Co.*, No. 14-16-00635-CV, 2017 WL 4440530, at *6 (Tex. App.—Houston [14th Dist.] Oct. 5, 2017, pet. denied) (citing *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000)). A counsel's statement on behalf of a client may constitute a judicial admission. *In re Estate of Guerrero*, 465 S.W.3d 693, 705 (Tex. App.–Houston [14th Dist.] 2015, pet. denied) (en banc). To constitute a judicial admission, the statement must be (1) made in the course of a judicial proceeding; (2) contrary to a fact essential for the party's recovery or defense; (3) deliberate, clear, and unequivocal; (4) in accordance with public policy if given conclusive effect; and (5) consistent with the opposing party's theory of recovery. *Id.* at 705-06.

Here, shortly before Fisher's counsel said "yes" to the judge's inquiry, he said that he "believed" Davis had alleged in his affidavit that the misrepresentations either occurred in Texas or had been made in an email. It is unclear whether counsel was still referencing Davis's affidavit when he said "yes" or whether he was intending to personally assert that misrepresentations occurred in Texas. Moreover, immediately after saying "yes," counsel began to argue that it did not matter for jurisdictional purposes, suggesting that counsel did not think the truth of those allegations was important. Under these circumstances, we cannot say that Fisher's counsel clearly, deliberately, and unequivocally asserted as fact that Fisher made fraudulent misrepresentations in Texas. Consequently, counsel's statement did not constitute a judicial admission. *See, e.g., Dealer Computer Servs., Inc. v. DCT Hollister Rd, LLC*, 574 S.W.3d 610, 625 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *Estate of Guerrero*, 465 S.W.3d 693 at 706.